IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **TROY D. WHITMORE,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil No. **04-837-JPG** |
| | ) |
| **LIEUTENANT WALKER, et al.,** | ) |
| | ) |
| Defendants. | ) |

## REPORT and RECOMMENDATION

This Report and Recommendation is respectfully submitted to District Judge J. Phil Gilbert pursuant to 28 U.S.C. §§636(b)(1)(B) and (C).

Before the court is Defendants' Motion for Summary Judgment in Part, filed on behalf of defendants Carter, Casten, Ferrell, Fritz, Greenley, Henry, Helmer, Miner, Presswood, Rees, Tourville, Walker, Welborn, Westerman and Witthoft. **(Doc. 107)**.[1] Defendants filed a Memorandum in Support **(Doc. 108)**, which is accompanied by exhibits, including affidavits and portions of plaintiff's deposition.

Defendants served upon the *pro se* plaintiff the notice required by ***Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982)**. **(Doc. 109)**. Plaintiff filed a response at **Doc. 111**. He has attached several exhibits, including his own affidavit.

Plaintiff Troy D. Whitmore (a/k/a Don Gregerson) is an inmate in the custody of the Illinois Department of Corrections. He brings suit under 42 U.S.C. §1983 for violation of his

---

[1]Defendants Hood and Essary have not been served. The court issued a notice of impending dismissal at Doc. 34. Plaintiff has not provided additional information. Defendant Moore is in default, and there is a pending motion for default judgment. See, Docs. 52 and 92.

1

Eighth Amendment rights while he was incarcerated at Menard Correctional Center.

On preliminary review, the court divided the amended complaint **(Doc. 16)** into eighteen counts, and dismissed eight of the counts. The pending counts are as follows:

Count 2: Against Defendant Mezo for use of excessive force on November 22, 2002.[2]

Count 3: Against Defendants Tourville, Westerman, Moore and unspecified officers for use of excessive force on May 16, 2003.

Count 4: Against Defendants Moore, Ferrell, Welborn, Fritz and Casten for denial of medical attention on May 16, 2003.

Count 5: Against Defendants Casten and Fritz for use of excessive force, on May 16, 2003.

Count 6: Against Defendants Moore and Walker for denial of medical attention on May 16, 2003.

Count 8: Against Defendant Carter for use of excessive force, on October 27, 2004.

Count 10: Against Defendants Carter, Helmer, Miner and Essary for confining him to inhumane conditions, on October 27, 2004.

Count 14: Against Defendant Robinson for use of excessive force on April 8, 2005.

Count 15: Against Defendants Rees, Carter, Witthoft, Fritz, Greenley, Hood, Henry and Presswood for excessive force on April 8, 2005.

Count 16: Against Defendants Rees, Presswood and Witthoft for placing him a stripped control cell on April 8, 2005, in retaliation for filing a lawsuit.

In order to aid in the analysis, the court will give a brief description of the events giving rise to plaintiff's claims. This description is derived from the preliminary review order, **Doc. 17**,

---

[2]Defendant Mezo filed a separate motion for summary judgment at Doc. 105, which is the subject of a separate Report and Recommendation.

and the allegations of the amended complaint. The first date in issue is May 16, 2003. There was an institution-wide shakedown that day. Plaintiff claims that Tourville, Westerman and Moore used excessive force on him during the shakedown of his cell, and that Moore, Ferrell, Welborn, Fritz and Casten refused him medical treatment for injuries caused by the excessive force. Later that same day, as part of his attempt to get medical attention, plaintiff stuck his arm through the food slot in his cell door. Casten ordered him to remove his arm from the food slot, and that he refused to do so. He claims that Casten kicked the food slot door closed, which caused injuries to plaintiff's right shoulder. Defendants Moore and Walker then refused to provide medical attention for the shoulder injury, which consisted of cuts.

On October 27, 2004, plaintiff was dissatisfied with the dinner tray delivered to his cell. In an attempt to get another tray, he stuck his arm through the food slot. Officer Henry ordered him to remove his arm, and he refused. Defendant Carter then came to the cell. While plaintiff's arm was still in the food slot, Carter maced him. Thereafter, he was placed in a stripped out cell by defendant Carter. Although he had mace residue on his skin, Carter turned off the water. Defendants Helmer, Miner and Essary refused his requests to turn on the water to flush the toilet, and he was not allowed to take a shower. He was in the cell with no running water for six days.

Finally, on April 8, 2005, plaintiff was not taken for his scheduled shower. Defendants Robinson and Fritz were delivering meals that day. Plaintiff complained to them about the shower, but they would not intercede. Fritz tried to close the food slot door, but plaintiff pushed his hand through it to continue the discussion. Plaintiff refused Robinson's order to remove his hand. Robinson then yanked plaintiff's arm through the slot and handcuffed his wrist to the outside handle of the cell door. (Robinson has not moved for summary judgment on the claim

against him, which is Count 14.)  Later that day, plaintiff was taken to a holding cell where he was strip searched by defendants Rees, Carter, Witthoft, Fritz, Greenley, Hood, Henry and Presswood.  These defendants then assaulted him without provocation.  Then, Rees, Presswood and Witthoft put him in a flooded, stripped-out cell in retaliation for plaintiff having filed a lawsuit in which Fritz was named as a defendant.

## Standard for Summary Judgment

Summary judgment is appropriate under **Fed.R.Civ.P. 56** where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  **Fed.R.Civ.P. 56(c); see** *Celotex Corp. v. Catrett*, **477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986).**  The evidence is construed in the light most favorable to the non-moving party and all justifiable inferences are drawn in favor of that party.  **See,** *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 255, 106 S.Ct. 2505, 2513-14 (1986).**

Once the moving party has produced evidence to show that he or she is entitled to summary judgment, the non-moving party must affirmatively demonstrate that a genuine issue of material fact remains for trial.  ***Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996).**  In responding to a summary judgment motion, the non-moving party may not simply reiterate the allegations contained in the pleadings; more substantial evidence must be presented at this stage.  Moreover, a genuine issue of material fact is not shown by the mere existence of "some alleged factual dispute between the parties," *Anderson*, **477 U.S. at 247**, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, **475 U.S. 574, 586 (1986).**  Rather, a genuine issue of material fact exists only if "a fair-minded

4

jury could return a verdict for the [nonmoving party] on the evidence presented." ***Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512.**

Plaintiff is a *pro se* inmate, and his pleadings must be liberally construed. ***Duncan v. Duckworth*, 644 F.2d 653, 655 (7th Cir.1981).**

<u>**Applicable Law**</u>

**1.** <u>**Excessive Force**</u>

The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under Section 1983. ***Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000)**. "In cases involving the claimed use of excessive force, 'the core judicial inquiry' is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously or sadistically to cause harm.'" ***Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (*citing Hudson*, 603 U.S. at 7)).** The court must consider a variety of factors including "'the need for an application of force, the relationship between that need and the force applied, the threat reasonably perceived by the responsible officers, the efforts made to temper the severity of the force employed, and the extent of the injury suffered by the prisoner.'" *Id*. "While a plaintiff need not demonstrate a significant injury to state a claim for excessive force under the Eighth Amendment, 'a claim ordinarily cannot be predicated on a *de minimus* use of physical force.'" *Id*. "'The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind.'" *Id*.

5

## 2. Deliberate Indifference to Serious Medical Needs

The Eighth Amendment prohibits "deliberate indifference to serious medical needs."*Oliver v. Deen*, 77 F.3d 156, 159 (7th Cir.1996) (quoting *Estelle v. Gamble*, 429 U.S. 97, 97 St. Ct. 285 (1976)). In order to prevail on his constitutional claim, plaintiff must satisfy the two-part test enunciated in *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970 (1994). The test has two prongs, that is, an objective and a subjective component. Thus, plaintiff must show (1) his condition was objectively serious, and (2) the defendant acted with deliberate indifference, which is a subjective standard. *Lee v. Young*, 533 F.3d 505, 509 (7th Cir. 2008). An objectively serious medical condition is one which "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). The subjective prong of the *Farmer* test requires that plaintiff show that defendant acted with a sufficiently culpable state of mind, "something akin to criminal recklessness." *Norfleet v. Webster*, 439 F.3d 392, 397 (7th Cir. 2006). Negligence or medical malpractice does not meet this standard. *Id.*, at 396; *Estelle*, 97 S. Ct. at 292; *Wood v. Woracheck*, 618 F.2d 1225 (7th Cir. 1980).

Liability under 42 U.S.C. §1983 is personal; there is no liability unless the defendant "caused or participated" in the deprivation of a constitutional right. *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996). Thus, the two-prong *Farmer* test must be satisfied as to each defendant.

## 3. Conditions of Confinement

The Eighth Amendment requires that prison inmates be given "the minimal civilized measure of life's necessities." *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988), and

6

cases cited therein. However, they are not entitled to conditions that are pleasant or comfortable. "To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." **Rhodes v. Chapman, 452 U.S. 337, 347 101 S.Ct. 2392, 2399 (1981).**

In order to prevail on an Eighth Amendment conditions of confinement claim, plaintiff must show that defendant imposed conditions which denied him "the minimal civilized measure of life's necessities" *and* that defendant "acted with a culpable state of mind." **Gillis v. Litscher, 468 F.3d 488, 491 (7th Cir. 2006)**. That is, plaintiff must satisfy the two-prong *Farmer* test, discussed above.

**4.     Retaliation**

Prison officials may not retaliate against a prisoner for filing a lawsuit or grievance. "An act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution." **DeWalt v. Carter, 224 F.3d 607, 618 (7th Cir., 2000)**.

## Analysis

### Count 3

Defendants Tourville and Westerman move for summary judgment on Count 3. Tourville argues that the force applied by him ( a "poke" to plaintiff's back) was not excessive. Westerman argues that plaintiff only alleges that another inmate told plaintiff that Westerman told officers to take plaintiff to the shower area.

Plaintiff described the events of May 16, 2003, in his deposition, **Doc. 108, Ex. A, pp. 26 - 45**. An institutional shakedown took place that day at Menard Correctional Center, meaning that every cell in the institution was shaken down. Plaintiff was assigned to the North 2

7

Segregation Unit on that date. Plaintiff and his cell mate were removed from the cell and were told to stand facing the wall, and defendant Tourville instructed them not to talk. Plaintiff then made a comment to his cell mate. Defendant Tourville poked in the back and told him to "shut the fuck up." Plaintiff then turned around and told Tourville "Hey, man, if I did something wrong you need to write me a ticket, don't be poking me man." Two unidentified officers then grabbed plaintiff and put him in a corner, on his knees, and pressed his face to the wall. In order to draw attention to his situation, plaintiff began yelling. Lieutenant Westerman told the officers to take him out of the sight of the other inmates, and tact team members picked him up and half dragged him to the shower cell. He was again placed on his knees with his face pressed to the wall, and unidentified tact team members stood on his ankles, causing him pain.

According to plaintiff's deposition testimony, the poke administered by Tourville was "[h]ard enough for it to hurt and hard enough to move me when he poked me." **Doc. 108, Ex. A, p. 31**. This poke does not rise to the level of unconstitutional excessive force.

A "single and isolated act" consisting of a *de minimis* application of force is not excessive force. See, ***DeWalt v. Carter*, 224 F.3d 607, 620 (7th Cir.2000)**. In *Dewalt*, plaintiff alleged that an officer, in response to a derogatory comment from the plaintiff, had shoved the plaintiff into a door frame. *Id.* **at 611**. In weighing the requiring factors, the Court found that the correctional officer's use of force was *de minimis*, and therefore did not constitute cruel and unusual punishment. *Id.* **at 620**. The Court noted that the shove was a "single and isolated act," and the bruising suffered by the prisoner had not been "particularly serious." *Id*. Similarly, poking plaintiff in the back in an effort to get him to follow the order to be silent did not violate his constitutional rights.

The only other allegation against Tourville is that he was present in the shower when unknown officers forced him to his knees and stood on his ankles. However, plaintiff must demonstrate more than mere presence in order to hold defendant liable. Liability under Section 1983 requires personal involvement. There is no *respondeat superior* liability in a case such as this. ***Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001); *Duckworth v. Franzen*, 780 F.2d 645, 650 (7th Cir. 1985).** In order to show personal involvement, plaintiff must show that the defendant acted with deliberate or reckless disregard of the plaintiff's constitutional rights, or that defendant directed or knowingly consented to the conduct alleged to constitute the violation. ***Smith v. Rowe*, 761 F.2d 360, 369 (7th Cir. 1985); *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982).** The most that plaintiff testified to was that Tourville was present in the shower room. This is not enough for liability under Section 1983.

According to plaintiff's testimony, the only action by defendant Westerman was that he told other officers to take plaintiff out of the sight of the rest of the inmates. This knowledge is based on statements that other inmates made to plaintiff. **Doc. 108, Ex. A, pp. 35-36**. Obviously, this does not give rise to liability for excessive force or any other constitutional violation on the part of Westerman as he cannot, without more, be held liable for the alleged actions of the other, unidentified, officers in the shower. See, ***Smith v. Rowe*, *supra*; *Crowder v. Lash*, *supra*.**

In his response, plaintiff suggests that both Tourville and Westerman are liable because their actions violated provisions of the Illinois Administrative Code. **See, Doc. 111, pp. 39-44.** However, Section 1983 does not protect plaintiff from violations of state law or regulations. ***Thompson v. City of Chicago, et al.*, 472 F.3d 444, 454 (7th Cir. 2006).** Summary judgment

should be granted in favor of Tourville and Westerman on Count 3.

## Counts 4 and 6

Defendants Ferrell, Welborn, Fritz, Casten, and Walker move for summary judgment on Counts 4 and 6. They argue that their refusal to obtain medical treatment for plaintiff does not violate the constitution because plaintiff was not suffering from a serious medical need.

Counts 4 and 6 arise out of plaintiff's requests for medical treatment following the poke by Tourville, the events in the hallway, and the events in the shower stall. Plaintiff testified in his deposition that he had bruises and his ankle was swollen. **Doc. 108, Ex. A, p. 34**. He testified that, after the officers stood on his ankles in the shower, he was unable to put weight on his ankle. When he was returned to his cell after the events in the shower cell, he had red swelling on his wrists from the cuffs, pain and swelling in his ankle, and bruising on his face and behind his ears. **Id., p. 41**. According to plaintiff, the stress on his ankle gave him a hangnail. There is no explanation in the record of how the development of a hangnail could be connected to an officer standing on his ankle. In any event, plaintiff put in several sick call slips, and was eventually seen for the hangnail. He was unsure when he first received medical attention following the events of May 16, 2003. **Id., pp. 43-45**. There is no indication in the record of what kind of treatment was rendered to plaintiff. He testified that he never got an X-ray of his ankle. **Id., p. 43.** There is no suggestion that he needed an X-ray or that his ankle was fractured.

Defendants are correct that the record demonstrates that plaintiff was not suffering an objectively serious medical condition on May 16, 2003. A lay person would not perceive that bruises and swelling as testified to by plaintiff, would require immediate medical attention. See, e.g., ***Pinkston v. Madry*, 440 F.3d 879, 891 (7th Cir. 2006)**, in which the Seventh Circuit held

10

that an inmate who suffered a swollen cheek and a split lip in an altercation did not present an objectively serious medical need.

In addition, plaintiff cannot meet the subjective prong of the *Farmer* test, which requires that he show that the named defendants acted with "a sufficiently culpable state of mind." **Lee, 533 F.3d at 509**. As to the defendant's state of mind "negligence or even gross negligence is not enough; the conduct must be reckless in the criminal sense." *Id*. Reckless conduct is "'conduct so dangerous that the deliberate nature of the defendant's actions can be inferred.'" ***Foelker v. Outagamie County*, 394 F.3d 510, 513 (7th Cir.2005) (*citing Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir.1999))**. Failing to provide immediate medical attention for bruising and a swollen ankle does not constitute reckless conduct.

Defendant Moore has not been served and has not joined in the motion. However, summary judgment should be entered in his favor on Counts 4 and 6 as well, as plaintiff cannot show that he was suffering from an objectively serious medical condition. See, ***Bonny v. Society of Lloyd's*, 3 F.3d 156, 162 (7th Cir. 1993).**

## Count 5

Defendant Casten moves for summary judgment on Count 5.

Count 5 also arises out of the events of May 16, 2003. Defendant Casten was the acting sergeant that day. He came to plaintiff's cell after the shift changed because plaintiff, according to his deposition testimony, was "still trying to get medical attention" by refusing to remove his arm from the food slot in his cell door. **Doc. 108, Ex. A, pp. 39-40.** In the amended complaint, plaintiff admits that Casten ordered him to remove his arm from the food slot, and that he refused to do so. **(Doc. 16, p. 32, ¶ 101)**. He testified that Casten kicked the food slot door,

11

which caused "lacerations and cuts" on plaintiff's right shoulder. **Doc. 108, Ex. A, pp. 39-40.**

Casten's actions did not violate the Constitution. Casten does not deny that he closed the food slot door on plaintiff's shoulder. Rather, he argues that used appropriate force to deal with the security situation created by plaintiff's refusal to remove his arm from the food slot. This court agrees.

Plaintiff seems to believe that prison guards are prohibited from using any sort of physical force on him at all. He is incorrect. Not "every malevolent touch by a prison guard gives rise to a federal cause of action." ***Hudson v. McMillian*, 503 U.S. 1, 9, 112 S.Ct. 995, 1000 (1992).** A *de minimis* use of force, as long as it is "not of a sort repugnant to the conscience of mankind," is not prohibited by the Eighth Amendment. ***Ibid.***

The Seventh Circuit has held, on facts similar to the facts in this case, that closing a cuffport door on an inmate's arm did not violate the Eighth Amendment. ***Outlaw v. Newkirk*, 259 F.3d 833, 838-839 (7th Cir. 2001).** See also, ***DeWalt v. Carter*, 224 F.3d 607, 619-620 (7th Cir. 2000)**, in which the Seventh Circuit held that shoving an inmate into a doorframe was not excessive force.

Defendant Fritz is also named in this count. The allegation against him is that he "used his body to shield defendant C/O Casten's actions from being seen by anyone looking down the gallery." **Amended Complaint, Doc. 16, ¶103.** Although he has joined in the motion for summary judgment with regard to other counts, Fritz has not moved for summary judgment as to Count 5.

## Count 8

Count 8 arises out of another incident in which plaintiff refused to remove his arm from

12

the chuck hole in an attempt to persuade the guards to do what he wanted.  In this instance, his goal was to get a replacement dinner tray, as the tray served to him contained a burned hamburger.  Carter, the only defendant named in this count, moves for summary judgment.

On October 27, 2004, plaintiff was dissatisfied with his dinner tray because it contained a burned hamburger.  He was in segregation at that time.  Plaintiff's deposition testimony established that segregation inmates eat their meals in their cells.  Meals are served by putting a disposable food tray through the food slot ("chuck hole") in the cell door.  The chuck hole door is kept locked; it is opened by an officer when meals are distributed, and locked again after the trash is picked up.  Plaintiff complained about his hamburger, and asked defendant Henry for a different tray.  Henry told him they were all like that and he would not give him another tray.  Officer Greenley was also present, but he also refused to give plaintiff another meal.  Whitmore then put his arm through the slot and said that he wanted to talk to the sergeant.  Henry asked him to remove his arm, but he refused.  Sergeant Carter then arrived at the cell.  When Carter declined to give him another meal, plaintiff perceived that Carter "wouldn't be reasonable about it."  Plaintiff then demanded to see a lieutenant.  According to plaintiff, Carter then sprayed him with mace.  When plaintiff did not remove his arm from the hole, Carted then sprayed him a second time.  Plaintiff denied that he reached for grabbed Henry's utility belt.  He does admit that he kept his arm in the food slot during this series of events.  **Doc. 108, Ex. A, pp. 45-57.**

The affidavits of defendants Henry and Carter are attached to **Doc. 108** as Exhibits B and C.  Defendants essentially agree with plaintiff's version of the events leading up to the use of mace, except that defendants claim that plaintiff reached for Henry's utility belt before he was maced.  This factual dispute is not dispositive of the outcome of the motion.

13

The use of tear gas, mace or similar chemical agents on a prisoner is not a per se violation of the Eighth Amendment. On the contrary, the Seventh Circuit has clearly held that a prison guard may use such chemical agents when reasonably necessary to preserve internal order and discipline in the prison. ***Soto v. Dickey*, 744 F.2d 1260, 1269-1270 (7ht Cir. 1984)**. "The use of mace, tear gas or other chemical agent of the like nature when reasonably necessary to prevent riots or escape or to subdue recalcitrant prisoners does not constitute cruel and inhuman punishment." ***Soto*, 744 F.2d at 1270.** Further, the fact that the inmate is locked in his cell or in handcuffs does not change the rule. *Id*.

In *Soto*, the Seventh Circuit pointed out that the institutional consideration of internal security is central to all other correctional goals. "If prison officials are to be free to take appropriate action to ensure the safety of inmates and correctional personnel, they must be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline to maintain institutional security. Such considerations are peculiarly within the province and professional expertise of correctional officers, and without substantial evidence to indicate such officials have exaggerated their response to these considerations, courts should defer to their judgment." ***Soto*, 744 F.2d at 1269.** Here, plaintiff freely admits that he disobeyed several orders to remove his arm from the chuck hole, and that it was his intention to keep his arm there until he moved up the chain of command to a lieutenant, all in the quest of getting another meal tray. In his response, plaintiff argues that defendants did not try some other option, such as physically removing his arm from the hole, before they resorted to mace. **Doc. 111, p. 55.** However, the Eight Amendment does not require prison guards to engage in physical struggle with an inmate before using chemical

14

mace. Indeed, part of the rationale for using mace is to allow the guards to avoid engaging in physical altercations with an inmate.

Whether or not plaintiff reached for Henry's duty belt, the record establishes that defendant Carter's use of force was appropriate, and he is entitled to summary judgment on Count 8.

### Count 10

Defendants Carter, Helmer and Miner move for summary judgment on Count 10 because they do not have the authority to make the decision of whether to turn on the water in a restricted property cell. Rather, they assert, that decision is made by a shift commander.

Miner's affidavit is attached to **Doc. 108 as Exhibit E**. He states that the shift commander makes the decision as to whether to turn the water off completely, but that it will be turned back on in twenty-four hours. He also states that, if the inmate asks him to turn the water on so that the toilet can be flushed, he will do so.

Plaintiff testified that he still had mace on his skin when he was placed in the restricted cell, and that Helmer and Miner refused to turn on the water so that he could wash. He also testified that they would not turn the water on to allow him to flush the toilet. **Doc. 108, ex. A, pp. 58-59.**

Defendants' brief argument with regard to Count 10 does not establish that they are entitled to judgment. First, their argument does not answer all of plaintiff's allegations. He also claims that he was denied hygiene products and bed linens for six days, which defendants do not mention. In addition, there is a dispute as to whether the water was turned on so that the toilet could be flushed. Plaintiff claims that he was in the cell for six days with the water turned off,

15

and that the defendants refused to turn on the water to flush the toilet.  **Doc. 16, ¶¶127-132; Doc. 108, ex. A, pp. 58-59.**  The motion should be denied as to Count 10.

### Count 15

Defendants Rees, Carter, Witthoft, Fritz, Greenley, Henry and Presswood move for summary judgment on Count 15.  They argue that the force they used was appropriate and not excessive.

Count 15 arises out of the events of April 8, 2005.  Plaintiff testified that he was denied his scheduled shower that day.  He was still housed in the segregation unit.  He asked Officer Robinson, who was delivering meals, to get the sergeant so plaintiff could talk with him about getting a shower.  Robinson refused.  Once again, plaintiff stuck his arm into the chuck hole so that he could continue the conversation.  Robinson grabbed his hand and cuffed him to the outside handle of the cell door.  (Count 14 alleges excessive force against Robinson, who has not moved for summary judgment.)  Plaintiff testified that he was left like that for close to three hours.  Then, Rees came to the cell and told him to cuff up, which he did.  Plaintiff was taken to a shower cell.  Rees, Carter, Witthoft, Fritz, Greenly, Henry, Hood and Presswood were present.  Rees said they were going to do a strip search.  Plaintiff refused.  Rees told him to cuff up, which he did.  After he was cuffed, Presswood, Witthoft, Fritz and Carter forced him to his knees, and then forced him forward, causing him to strike his forehead on the ground.  Defendants then cut his clothes off.  Plaintiff was protesting, and Presswood put his knee on his neck and was choking him.  Plaintiff also testified that Presswood kicked him, stepped on his bare feet, and forced his face into a door frame.  Plaintiff testified that he had not been resisting or fighting, and that he had not done anything to cause them to use force on him.  **Doc. 108, Ex. A, pp. 60-80.**

16

Defendants's version of the events is that the use of force was justified because plaintiff refused to be strip searched, resisted going into the shower, and turned toward Fritz in an aggressive manner. **Doc. 108, p. 16.** Obviously, the factual dispute precludes summary judgment on Count 15.

### Count 16

Defendants Rees, Presswood and Witthoft move for summary judgment on Count 16, the retaliation claim, because they allege that they had no knowledge of the lawsuit against Fritz at the time.

Plaintiff testified that, after incidents giving rise to Count 15, he was taken to see a nurse, and then was placed in a "control cell" in segregation. In a control cell, the inmate cannot turn off the light, which remains on twenty-four hours a day, and the inmate cannot reach out of the cell. This particular cell was flooded. There was a pool of water on the floor and the bunks had water on them. Plaintiff was placed in the cell naked. Defendants then walked away, laughing, and one of them said something about a lawsuit that plaintiff had filed against Fritz. **Doc. 108, Ex. A, pp. 82- 84.** In his affidavit attached to **Doc. 111**, plaintiff elaborates that the statement was to the effect that he had better drop his lawsuit against Fritz "and them" or else next time it would be worse for him. This was evidently a reference to the original complaint filed in this case in November, 2004.

Defendants argue that they could not have known about this lawsuit in April, 2005, because the first defendants were not served until September, 2007. There is no factual support, such as by affidavit, for the proposition that defendants did not have actual knowledge of the lawsuit in April, 2005. Plaintiff testified that his legal papers were copied in the prison law

17

library, and that "officer have easy access to anything," so it did not surprise him that they knew about the lawsuit. **Doc. 108, ex. A, p. 84**.

The record now before the court does not permit the court to reach the conclusion that defendants were unaware of the lawsuit in April, 2005. Therefore, summary judgment is not warranted.

## **Recommendation**

For the foregoing reasons, this court recommends that Defendants' Motion for Summary Judgment in Part **(Doc. 107)** be **GRANTED in part and DENIED in part as follows**:

| | |
|---|---|
| Count 3 | **GRANTED** as to defendants Tourville and Westerman; |
| Count 4 | **GRANTED** as to defendants Moore, Ferrell, Welborn, Fritz, Casten; |
| Count 5 | **GRANTED** as to defendant Casten; |
| Count 6 | **GRANTED** as to defendants Moore and Walker; |
| Count 8 | **GRANTED** as to defendants Carter; |
| Count 10 | **DENIED** as to all defendants; |
| Count 15 | **DENIED** as to all defendants; |
| Count 16 | **DENIED** as to all defendants. |

If this recommendation is accepted in its entirety, the following counts will remain pending:

Count 2, against defendant Mezo;[3]

Count 3 as to defendant Moore only;

---

[3] Defendnat Mezo's motion for summary judgment as to Count 2 is the subject of a separate Report and Recommendaiton.

Count 5 as to defendant Fritz only;

Count 10 as to defendants Carter, Helmer, Miner and Essary;

Count 14 as to defendant Robinson;

Count 15 as to defendants Rees, Carter, Witthoft, Fritz, Greenley, Hood, Henry and Presswood; and

Count 16 as to defendants Rees, Presswood and Witthoft .

**Objections to this Report and Recommendation must be filed on or before February 6, 2009.**

**Submitted: January 20, 2009.**

**s/ Clifford J. Proud**<br>**CLIFFORD J. PROUD**<br>**UNITED STATES MAGISTRATE JUDGE**