# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| TROY D WHITMORE, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.: **3:04-cv-00837-JPG-PMF** |
| | ) | |
| DONALD SNYDER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

**FRAZIER, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Philip M. Frazier from United States District Judge J. Phil Gilbert pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation.

Before the Court is defendant Major Moore's motion for summary judgment (Doc. 180) and memorandum in support (Doc. 181). The plaintiff has filed a response (Doc. 183) in opposition to the motion. For the following reasons, it is **RECOMMENDED** that the defendant's motion for summary judgment (Doc. 180) be **DENIED**.

## I. BACKGROUND

Interpreting the record most favorable to the nonmoving party, the Court will now summarize the relevant facts of this case. On the morning of May 16, 2003, prison officials at Menard Correctional Center ("Menard") conducted an institutional cell shakedown in the North 2 Segregation wing of the prison. The shakedown was conducted by a contingency of correctional officers, including a tactical team wearing orange and black helmets and gear. The plaintiff, Troy D. Whitmore, and his cellmate, James Ward, shared Cell 2-22 in the wing that was subject to the institutional shakedown that morning. An unknown tactical team officer

1

ordered the cellmates to submit to a strip-search. The cellmates were then handcuffed, ordered to exit the cell and stand facing the wall in front of the cell, and instructed to remain silent. Shortly thereafter, Whitmore said something to Ward, and defendant Correctional Officer ("C/O") Torville responded by poking Whitmore in the back and telling him to "shut the fuck up, bitch."

Tensions began to escalate when Whitmore told defendant C/O Torville not to poke him and write him a disciplinary ticket if he violated a rule. Moments later, Whitmore was violently grabbed underneath the arms by tactical team officers on each side and pulled forcefully off the wall to a corner where he was forced to his knees with his face shoved into the corners of the wall. While forcefully pressed into the corner, a tactical team officer grabbed Whitmore by the handcuffs and pulled Whitmore's arms upward, which caused face to grind against the corners of the wall and caused pain to his wrists and shoulders. Whitmore then yelled out to tell the officers to stop as he tried to stand up. In response, two tactical team members stood on each of Whitmore's ankles as he cried out in pain. While this was happening, Whitmore tried to bring attention to what he perceived to be unlawful corporal punishment by calling out "I am being punished for talking. This is corporal punishment, which is prohibited by D.R. 504. I am not resisting. Does everyone see that I am not resisting?" Other inmates, including Angel Arnelas, observed these events from nearby cells and pleaded for the officers to stop.

While this commotion was occurring, defendants Major Moore and C/O Westerman conferred, and defendant Westerman told a tactical team officer to take Whitmore out of the sight of other inmates. Whitmore was then violently yanked to his feet and dragged and carried to Cell 2-34 (a shower cell) where he was again forced to his knees with his face pressed forcefully into a corner. The tactical team members again violently pulled upward on

Whitmore's handcuffs and stood on each of Whitmore's ankles, which caused Whitmore to cry out in pain and repeat his pleas for the officers to stop. The officers then dug their thumbs into the side of Whitmore's face and taunted him by saying things like "you're not so tough now, are you, killer?" and "you don't run anything around here; you're an inmate." Whitmore overheard other officers in the background laughing.

While detained in the shower cell, Whitmore again yelled in hope that other inmates would hear him. Whitmore described what the officers were doing to him, and other inmates continued their pleas for the officers to stop. As the pain from yanking on the handcuffs and standing on his ankles became more excruciating, Whitmore began to call out his name and number to the other inmates, asked the unknown tactical team officers for their names, and told the officers that they were violating his rights. The tactical team officers did not respond.

Sometime later, defendant Moore appeared and stated that "they are ready for him now." Whitmore was then pulled to his feet. When Whitmore attempted to stand up, he realized that he could not put weight on his left ankle. He was then dragged and carried out of the shower cell. As he was brought out of the shower cell, defendant Moore looked directly at Whitmore and refused to do anything about what Whitmore believed to be abusive behavior by the tactical team officers. Whitmore was placed back into Cell 2-22 with his cellmate, Ward, and his handcuffs were removed. Ward observed that Whitmore's face had been bruised and swollen, as well as swelling and bruising behind his ears and in his wrists and ankles.

On November 15, 2011, Whitmore filed this lawsuit pursuant to 42 U.S.C § 1983 alleging violations of his constitutional rights. *See* Doc. 1. The amended complaint filed on October 16, 2006 contained eighteen counts against thirty-four defendants. *See* Docs. 16, 17. The Court screened the amended complaint on August 7, 2007 for legally frivolous claims

pursuant to its authority under 28 U.S.C. § 1915A and dismissed eight claims and thirteen defendants with prejudice. *See* Doc. 17. On March 27, 2009, the Court granted summary judgment for several more defendants and allowed the case to proceed against the eleven remaining defendants. *See* Docs. 120, 121.

As to the defendant bringing the instant motion, defendant Moore was named in three of the eighteen counts in the amended complaint. Moore was named in Count 3 for excessive force in violation of the Eighth Amendment of the U.S. Constitution. *See* Doc. 17 at 1-2. Moore was also named in Counts 4 and 6 for denial of medical treatment in violation of the Eighth Amendment. *See id*. The Court has already ruled in favor of Moore on Counts 4 and 6 for denial of medical treatment. *See* Doc. 121. Therefore, the remaining claim against Moore is Count 3 for excessive force. *See id*.[1]

## II. DISCUSSION

Defendant Moore argues in the instant motion (Doc. 180) that he is entitled to summary judgment on the remaining claim in Count 3 of the amended complaint. Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Spath*, 211 F.3d at 396.

---

[1] It should be noted that judgment was entered in favor of defendants C/O Torville and C/O Westermen on Count 3 on March 27, 2009. *See* Doc. 121. Defendant Moore is the only remaining defendant named in Count 3. *See* Doc. 17.

4

The parties do not dispute that the remaining claim against defendant Moore is the allegation that Moore failed to intervene to prevent others from violating the constitutional rights of Whitmore. The Seventh Circuit has long recognized the "failure to intervene" basis for a constitutional violation under the Eighth Amendment. *See Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005) (citing *Fillmore v. Page*, 358 F.3d 496, 506 (7th Cir. 2004); *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982), *accord Spence v. Staras*, 507 F.2d 554, 557 (7th Cir. 1974)). Under this theory, a defendant can be held liable for a constitution violation under 42 U.S.C. § 1983 if the plaintiff can demonstrate that the defendant "(1) had reason to know that a fellow officer was using excessive force or committing a constitutional violation, and (2) had a realistic opportunity to intervene to prevent the act from occurring." *Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009) (citing *Chavez v. Ill. State Police*, 251 F.3d 612, 652 (7th Cir. 2001); *Harper*, 400 F.3d at 1064); *see also Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000) (citing *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994)).

The parties dispute whether defendant Moore had reason to know that the alleged excessive force was occurring and had a realistic opportunity to intervene. *See* Doc. 181 at 3; Doc. 183 at 4. In support of his position, defendant Moore directs the Court to Whitmore's deposition. *See* Doc. 181 at 2. Indeed, the partial deposition of Whitmore submitted to the Court as evidence of defendant Moore's lack of knowledge of the alleged beating on May 16, 2003 seems indicate that defendant Moore arrived at the shower cell after the alleged beating occurred. *See* Doc. 181-1 at 13. It is, therefore, the position of the movant that even construing the facts most favourably for Whitmore, defendant Moore cannot be liable for a constitutional violation. *See* Doc. 181 at 3.

In response, Whitmore submits the sworn affidavit of Mr. Angel Arnelas, a Menard inmate who claims to have witnessed the events on May 16, 2003. *See* Doc. 183 at 4. Arnelas recites the events in his affidavit consistently with how Whitmore describes the events in his deposition. With regard to defendant Moore's involvement, Arnelas states that defendant Moore "stood quietly as to observe the situation from approximately [two and a half] feet away, behind Sort Team members." *See* Doc. 183-2 at 2. Arnelas further submits that he yelled out to defendant Moore as the beating was occurring and pleaded for the guards to stop twisting Whitmore's arms and standing on his ankles. *See id*. Arnelas also indicates that he witnessed defendant Westerman and defendant Moore smile at eachother. *See id*. Immediately after, Arnelas witnessed defendant Westerman walk over to the tactical team members and say something to them. *See id*. Immediately following that, the tactical team then dragged/carried Whitmore to the shower cell. *See id*.

The testimony contained in the affidavit sufficient to create a genuine issue of material fact for trial as to whether defendant Moore failed to intervene in order to prevent the alleged use of excessive force by unknown tactical team officers at Menard on May 16, 2003. Arnelas' testimony more than adequately demonstrates that there are factual questions as to whether defendant Moore had knowledge of the use of excessive force by tactical team members and whether he had a realistic opportunity to intervene. The Court may not evaluate the credibility of the witness at this time. *See Anderson,* 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict"). Accordingly, the Court cannot grant judgment as matter of law for defendant

Moore at this time, and the argument in his motion for summary judgment regarding the merits of the failure to intervene claim must fail.

Finally, the parties disagree as to whether defendant Moore is entitled to qualified immunity in this case. In order to defeat the defense of qualified immunity, Whitmore will need to demonstrate that "(1) that the guard's conduct violated his constitutional rights, and (2) that the violated right was clearly established at the time of the alleged misconduct." *Lewis*, 581 F.3d at 478 (citing *Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Payne v. Pauley*, 337 F.3d 767, 775 (7th Cir. 2003)). At this point, the Court should note that the defendant Moore's qualified immunity argument only addresses the first prong of the qualified immunity defense. *See* Doc. 181 at 4. As such, Whitmore did not have adequate notice that the second prong of the defense was an issue here, and he did not submit argument to the Court on that issue. *See* Doc. 183 at 5. The Court must consider defendant Moore's assertion of entitlement of qualified immunity on the second prong of the defense waived for purposes of his motion for summary judgment.[2] *See, e.g., U.S. v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived").

With regard to the first prong of the qualified immunity defense, the Court has already found in its previous discussion that a question of material fact exists as to whether defendant Moore violated Whitmore's constitutional rights. Accordingly, the Court concludes that defendant Moore is not entitled to qualified immunity at this time.

---

[2] Defendant Moore may reassert the qualified immunity defense, including a specific argument regarding the second prong of the defense, at trial. *See* FED. R. CIV. P. 50.

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that the defendant's motion for summary judgment (Doc. 180) be **DENIED**.

**SO RECOMMENDED.**

**DATED: October 7, 2011.**

*/s/ Philip M. Frazier*
PHILIP M. FRAZIER
UNITED STATES MAGISTRATE JUDGE